## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

**THE VARIABLE ANNUITY LIFE INSURANCE COMPANY and VALIC FINANCIAL ADVISORS, INC.,**

      **Plaintiffs,**

  **vs.**

**CHARLES CORETH, MICHAEL RAWLS, and THOMAS ROBERTSON,**

      **Defendants.**

**CIVIL NO.: 3:21-cv-00223-MHL**

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiffs The Variable Annuity Life Insurance Company ("VALIC") and VALIC Financial Advisors, Inc. ("VFA") (collectively, "Plaintiffs" or "the VALIC Companies") by and through their attorneys, file this Complaint for Injunctive Relief against Defendants Charles Coreth ("Coreth"), Michael Rawls ("Rawls"), and Thomas Robertson ("Robertson") (collectively, the "Defendants"). Plaintiffs state as follows:

## INTRODUCTION

1.      Plaintiffs bring this suit to obtain a temporary restraining order while Plaintiffs file a Statement of Claim with the Financial Industry Regulatory Authority ("FINRA") to pursue additional relief including permanent injunctive relief. A temporary restraining order is necessary to protect the private personal and financial information of Plaintiffs and Plaintiffs' clients from disclosure, to enforce restrictive covenants each Defendant agreed to in his Financial Professional Agreements ("FPAs"), and to enjoin Defendants from continuing to engage in unlawful and wrongful activities, including the misappropriation of trade secret and confidential information and their solicitation of Plaintiffs' customers. Plaintiffs seek only a temporary restraining order from this Court, as the merits of Plaintiffs' claims must be resolved in arbitration pursuant to American International Group Inc.'s Employment Dispute Resolution Program (for VALIC) and under the FINRA Code of Arbitration Procedure for Industry Disputes (for VFA).[1]

---

[1] The merits as to VFA's claims against all Defendants must be resolved in arbitration pursuant to the Financial Industry Regulatory Authority ("FINRA") Code of Arbitration Produce for Industry Disputes. Likewise, the claims brought by VALIC against Coreth and Rawls must be resolved in AAA arbitration pursuant to the American International Group Inc.'s Employment Dispute Resolution Program ("EDRP"). Although VFA must pursue its claims against Robertson in FINRA, he is not subject to the EDRP. If Robertson does not consent to arbitration of VALIC's claims against him, VALIC will determine if it will pursue damages against him in this Court.

## JURISDICTIONAL STATEMENT

2.      Subject matter jurisdiction exists by virtue of 28 U.S.C. § 1331 because certain claims asserted in this Complaint arise under the laws of the United States. In addition, this Court has jurisdiction pursuant to 28 U.S.C. § 1332 by virtue of diversity of citizenship.  The matter in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.  Injunctive relief is sought pursuant to Federal Rule of Civil Procedure 65.

## VENUE

3.      Venue is proper in this judicial district under 28 U.S.C. § 1391 because it is the district in which the conduct complained of arose.

## THE PARTIES

4.      VALIC is a Texas corporation with its principal place of business in Houston, Texas.  VALIC is qualified to do business in the State of Virginia.

5.      VFA is a Texas corporation with its principal place of business in Houston, Texas. VFA is qualified to do business in the State of Virginia.

6.      Coreth, Rawls, and Robertson are citizens of Virginia because they are permanent residents of Virginia.

## FACTUAL ALLEGATIONS

**Background Facts**

7.      VALIC specializes in providing retirement plans, including fixed and variable annuity contracts, as well as other financial products and services, to its clients.  VALIC has created a niche within the financial services industry by primarily marketing its products to tax exempt I.R.C. § 403(b) organizations, which include not-for-profit healthcare, education, government, public sector, and other like organizations.

8.      VALIC employs financial advisors (also referred to as "Financial Professionals") and appoints them to service the VALIC Companies' clients in a defined territory.  VALIC financial professionals provide advice to VALIC's 403(b) clients on products and services that are available within a client's applicable plan.  They also offer other advice based on each client's needs through VALIC's wholly-owned subsidiary, VFA, a broker-dealer.  VALIC supports its advisors with an array of tools, including training, marketing materials, pricing information, supervision, equipment, and access to computer systems developed and maintained by VALIC, such as AGILEnet, which collects and continually updates client account information. The financial advisors also serve as Financial Professionals for VFA in their respective territories, assisting clients and providing advice regarding non-VALIC products and services.

9.      VALIC has spent considerable time and resources over the decades to establish its client base in the annuities market, and VALIC has secured and maintained numerous client qualified retirement and retail accounts nationwide. Annuity products become profitable only after they have been held by a client for several years.  Therefore, the maintenance of long-term relationships with clients is vital to VALIC's success.

10.     In April 1987, Robertson began his employment with VALIC as a financial advisor.  As a condition of his employment, he entered into a Registered Representative Agreement ("RRA") with VFA, which was periodically updated.  As a condition of his continued employment, on June 29, 2020, Robertson executed a Financial Professional Agreement ("FPA"), a true and correct copy of which is attached hereto as Exhibit "A."  The FPA was intended to update and replace Robertson's previous RRA. VALIC is an intended third-party beneficiary under the FPA and is entitled to enforce it in all respects.

11.     In November 2008, Coreth began his employment with VALIC as a financial advisor.   As a condition of his employment, he entered into a Registered Representative Agreement with VFA. As a condition of his continued employment, on June 24, 2020, Coreth executed a Financial Professional Agreement, a true and correct copy of which is attached hereto as Exhibit "B."  The FPA was intended to update and replace Coreth's previous RRA.  VALIC is an intended third-party beneficiary under the FPA and is entitled to enforce it in all respects.

12.     In February 2014, Rawls began his employment with VALIC as a financial advisor.  As a condition of his employment, he entered into a RRA with VFA. As a condition of his continued employment, on June 29, 2020, Rawls executed a FPA, a true and correct copy of which is attached hereto as Exhibit "C."  The FPA was intended to update and replace Rawls' previous RRA. VALIC is an intended third-party beneficiary under the FPA and is entitled to enforce it in all respects.

13.     Defendants, like other VALIC financial professionals, worked with VALIC's 403(b) group clients, as well as to other clients of VALIC and of VFA, to provide advice and service.

14.     Each Defendant, like other VALIC financial professionals, obtained substantial compensation benefits, including commission payments on each new annuity sale and a commission percentage for plan contributions made by existing clients, termed "flow."  VALIC pays the costs associated with the sale, including commissions and management and administrative costs.  While the advisor reaps an immediate monetary benefit from this sale, VALIC takes a loss after paying out the costs, fees, and commissions associated with a new sale.

15.     To enable Defendants to service their clients, VALIC provided Defendants with access to extensive confidential VALIC Companies and client information, including access to

4

the VALIC Companies' confidential and proprietary databases, as described more fully below. VALIC paid Defendants and provided them with an opportunity to develop, cultivate, and maintain relationships with its clients.

16.     Defendants developed and/or were assigned VALIC Company client relationships while employed with VALIC; they did not bring these relationships or accounts to VALIC from a prior employment relationship.

17.     There is no public source available from which Defendants could ascertain the identities and contact information of the VALIC Companies' clients. Defendants also had access to personally identifiable information of VALIC Company clients, including social security numbers, which are not publicly available.

**The VALIC Companies' Trade Secrets and Other Confidential and Proprietary Information**

18.     Pursuant to the FPA, the VALIC Companies grant their financial professionals, including Defendants, access to the VALIC Companies' trade secrets and other confidential and proprietary information, which includes, but is not limited to, compilations of personal and financial information of the VALIC Companies' clients embodied in computer software systems and databases such as AGILEnet.

19.     The AGILEnet database compiles and updates on a daily basis client information, such as contact information, social security numbers, account balances, surrender values, maturity dates, flow status, past and present product investments, investment performance data, investment histories, demographic information, and customer preferences.  These computer systems and databases are located in central VALIC locations and are accessible nationwide by VALIC Companies' financial professionals – including Defendants – by means of special, VALIC-issued, password-protected laptop computers.  Financial professionals  are able to

download detailed client information for the book of business assigned to them by the VALIC Companies to authorized VALIC-issued laptop computers and to access that information, off-line, from the VALIC laptop.

20.     This detailed client information, which is compiled over many years at substantial expense, constitutes the VALIC Companies' trade secrets and confidential and proprietary information.  The VALIC Companies entrusted each Defendant with its trade secrets and related client information solely so that he could service clients for the VALIC Companies.

21.     The VALIC Companies' trade secrets are valuable to the VALIC Companies precisely because they are secret.  The VALIC Companies' client lists and related information are not publicly available or readily ascertainable, and they derive economic value because they are not generally known to the public or to other persons who can obtain economic value from their disclosure or use.  A competitor armed with this information, such as maturity dates, account balances, and the like, can target the VALIC Companies' most valuable and valued clients.  In addition, the VALIC Companies' databases and files are the only source of information pairing this critical financial information with the client contact information.

22.     The VALIC Companies have made reasonable efforts to preserve the confidentiality and secrecy of this information.  Several layers of passwords protect the VALIC Companies' databases, and employee access to these databases is limited to a need-to-know basis.  A VALIC Companies' financial advisor's access to client information, for instance, is restricted to those customers assigned to an advisor within his or her respective territory.  When a user accesses AGILEnet, one of the VALIC Company databases, and attempts to export information, the system provides the following warning: **"Warning: This information is confidential and proprietary to the company and cannot be downloaded or stored to any**

**non-approved company computer or removable storage device including but not limited to thumb drives, external drives, CDs and DVDs."** (Emphasis added).

23.     The VALIC Companies also require all financial professionals to execute confidentiality agreements similar in nature to the confidentiality clauses contained in Defendants' FPAs, and they have repeatedly done so for many years.

24.     The VALIC Companies further require all VALIC Companies financial professionals, including Defendants, to store all tangible customer records, including client files, documents, or any other documents containing confidential information, in a secure location with access to such information restricted to persons affiliated with the VALIC Companies.

**Defendants' Financial Professional Agreements**

25.     As a condition of employment with the VALIC Companies, Defendants were required to execute a FPA.  Through the FPAs, Defendants was authorized to market and sell products offered for sale by or through a "Protected Company."  The phrase "Protected Company" is defined at Paragraph IX (O) to include VALIC, VFA and VALIC Retirement Services Company.

26.     As a condition for continued employment, Defendants each executed an updated version of the FPA in June 2020, a mere eight months before their resignations.  Prior to executing the June 2020 FPAs, Defendants executed and were subject to a Registered Representative Agreement throughout their employment with VALIC.  The Registered Representative Agreement contained very similar provisions to the FPA.

27.     By affixing their signatures to the FPAs, Defendants acknowledged and agreed that during the term of the FPA, they would have access to and become familiar with certain trade secrets and other confidential and proprietary information belonging to the Protected

Companies and regularly used in the conduct of their business, such as proprietary databases, VALIC-facilitated training, customer personal and financial information, social security numbers, addresses, phone numbers, and other contact information. *See* Ex. A at 6, ¶ V (E).

28.     As part of their Financial Professional responsibilities, Defendants promised that they would not disclose confidential and proprietary information or trade secrets during the term of the FPAs or at any time after their termination:

> Financial Professional acknowledges that immediately upon execution of this Agreement, Financial Professional will acquire (or will be allowed to continued) access to the Protected Companies' Property, Trade Secrets, Confidential and Proprietary Information, and Nonpublic Personal Information, under circumstances that give rise to a duty to maintain their secrecy and limit their use. Accordingly, during the term of this Agreement and at all times after it termination, Financial Professional agrees to:
>
> > a.     maintain the confidentiality of the Protected Companies' Nonpublic Personal Information, Property, Trade Secret, and Confidential and Proprietary Information; and
> >
> > b.     not disclose, transfer, or otherwise Misappropriate such information in any way, including to or for the benefit of unaffiliated third parties.

Ex. A at 4, ¶ V (C)(3).

29.     In conjunction with this agreement to protect the VALIC Companies' trade secrets and confidential information, Plaintiffs agreed to provide Defendants access to such information, such as the customer base developed by the VALIC Companies and other benefits and opportunities.  Defendants also agreed that they would not, during the term of the FPAs and for a period of one year after their termination, "Solicit or Induce, or attempt to Solicit or Induce, directly or indirectly . . . any Protected Customer to end or alter Protected Customer's relationship with any Protected Company." Ex. A. at 7, ¶ V (F)(1)(a).

8

30.     In consideration for the above benefits, Defendants also agreed that they would not, during the term of the FPA and for a period of one year after their termination, "directly or indirectly Solicit or Induce or attempt to Solicit or Induce . . . any Financial Professional or other Protected Employee to terminate such Financial Professional or Protected Employee's relationship with Protected Companies." Ex. A. at 7, ¶ V (F)(1)(c).

31.     Defendants' responsibilities related to inducement and solicitation survive termination of the FPA.  *See* Ex. A at 8, ¶ V (H).

32.     Defendants acknowledged the adequacy of the consideration they received for the non-inducement and non-solicitation provisions described above.  *See* Ex. A at 7, ¶ V (F)(1).

33.     Defendants further agreed that they would maintain the confidentiality of Nonpublic Personal Information, which includes any personally identifiable financial information provided by a customer to the Protected Companies to obtain a product or service, in accordance with the federal Gramm-Leach-Bliley Act of 1999 and any other applicable privacy laws and regulations.  *See* Ex. A at 7, ¶ V(F)(2); and at 11 at ¶ VIII (K).

34.     Defendants acknowledged what property belonged to the Protected Companies and agreed to immediately return it, whether or not a demand was made, immediately upon termination. *See* Ex. A at 6, ¶ V (E)(1). This property includes, but is not limited to all files, records, documents and lists pertaining to the business of any Protected Company.  *See* Ex. A at 11, ¶  IX (M).

35.     Defendants consented to the injunctive relief sought herein:

In the event any Protected Company files suit or seeks arbitration for violation of any part of this Agreement, including but not limited to Sections V.C., E., and F., above, Financial Professional agrees that money damages will be difficult, if not impossible, to estimate, and that money damages cannot adequately compensate Protected Companies for injuries they will incur as a result of such a violation. Financial Professional consents to the entry of a temporary and/or preliminary injunction,

without bond, prohibiting Financial Professional from violating or continuing to violate the provisions of those Sections. Without limiting the foregoing, Financial Professional consents to the entry of a temporary and/or preliminary injunction, without bond, with respect to violations of the  restrictions included in Sections V.F.1.a and V.F.1.c. for a time period of not less than one year running from the date of entry of such injunction.

Ex. A at 9, ¶ VII (C).

36.     By virtue of the FPA, Defendants gained access to the VALIC Companies' trade secrets, proprietary, and confidential information including the identities of its clients, their names and addresses, their financial backgrounds, their investment objectives, their investments held with the VALIC Companies, and their goodwill.

**Defendants' Wrongful Acts and Improper Use of Confidential Information**

37.     In the months leading up to their resignation, Defendants repeatedly accessed AGILEnet and exported client lists.

38.     Specifically, each Defendant accessed AGILEnet between December 1, 2020 and February 5, 2021, and completed the following actions:

| | |
|---|---|
| December 2, 2020 | Coreth exported a client list |
| December 15, 2020 | Robertson exported a client list |
| December 15, 2020 | Rawls exported a client list |
| January 8, 2021 | Rawls exported a partial client list |
| January 26, 2021 | Rawls exported a client list |
| January 27, 2021 | Rawls exported a partial client list |

39.     The client lists that Defendants exported in December 2020 contain both complete lists of certain groups of clients and portions of each financial professional's entire books of business.

40.     The client list that Robertson exported on December 15, 2020, was his complete listing of Managed Investment Program ("MIP") clients.

41.     The client list Rawls exported on January 26, 2021 was his entire book of Guided Portfolio Services ("GPS") clients.

42.     Financial professionals are required to state a business reason for exporting data, including client data, from Plaintiffs' systems.  When Rawls exported the client list on January 26 he did not provide a legitimate business reason for the export.  Instead, he typed the following random keys into the field - "asfd."  Those four key strokes are not an abbreviation for any legitimate business reason.

43.     Defendants also made numerous client searches on AGILEnet on February 4 and 5, 2021, immediately before their resignations.  Those searches included accessing client information and account balances.

44.     After exporting the client lists, Coreth converted a large amount of VALIC's proprietary forms to PDF format on February 1, 2021, totaling 295 pages.

45.     Rawls also converted over thirty documents to PDFs from February 2 to 5, 2021.

46.     Robertson also converted numerous documents to PDFs in early February 2021.

47.     On February 5, 2021, without seeking authorization or permission, Robertson, Coreth, and Rawls entered the Richmond location, which had been closed for almost a year, cleaned out their offices, and removed  items without any oversight by their employer.

48.     After their resignations, Andrew Meinbresse, VALIC's Regional Vice President for the Atlantic Region, recalled a discussion he had with Rawls, Coreth, and Robertson in June 2019.

49.     At a dinner on June 19, 2019, Rawls, Coreth, and Robertson were talking to Meinbresse about succession planning and retirement and they asked Meinbresse if the

company would be willing to "buy them out," or purchase their books of business when they retired.

50.     Meinbresse explained that client accounts and client relationships belong to the company and do not belong to individual financial professionals or teams.  Meinbresse also explained that the company does not buy books of business from its agents because it provides the  agents with the clients that they are to service while employed with the VALIC Companies.

51.     Defendants then asked what would keep them from leaving, taking clients, and having another company buy them out.

**Defendants' Improper Inducement and Solicitation of Customers**

52.     Prior to their resignations, Defendants scheduled meetings with clients to occur after their resignations and provided clients with non-VALIC telephone numbers.

53.     Immediately upon the termination of their employment with VALIC, Defendants began to work for CG Advisory Services.  CG Advisory Services is an Investment Advisor firm and a direct competitor of Plaintiffs.  CG Advisory Services' investment accounts are custodied at TD Ameritrade. In other words, TD Ameritrade has custody of the funds in the accounts, while CG Advisory Services manages the accounts and relationships.

54.     Since the termination of their employment with the VALIC Companies, Defendants have directly or indirectly induced or solicited or attempted to induce or solicit Protected Customers (as that term is defined in the FPA) of the VALIC Companies to end or alter their relationships with the VALIC Companies and transfer their business to Defendants at GC Advisory Services.

55.     Clients who wish to transfer their account first contact the VALIC Companies' customer service and request the transfer.  Customer services processes the request, which

includes gathering certain information from the client to confirm it is actually the client making the request. Customer service then sends the client a transfer form to sign which contains pre-printed client information and a bar code imprinted on the form by the company.

56. VALIC has received transfer request forms from clients that do not contain the typical pre-printed information and bar code. Upon information and belief, Defendants took, or refused to return, the VALIC Companies' transfer forms and are using those forms to prepare transfer paperwork for clients they have solicited.

57. Prior to his resignation, Rawls corresponded with a VALIC client via email regarding the "new account" Rawls had "recently created" for her. Rawls also asked that the client call him at a telephone number unaffiliated with VALIC to "walk through the logistics of this." On February 19, 2021, that client transferred her account away from VALIC.

58. Soon following Defendants' departure, one of VALIC's financial professionals attempted to contact clients previously serviced by Coreth. At least eleven of those clients stated that Coreth had already contacted them regarding his separation from VALIC on February 5.

59. Between February 9 and March 11, 2021, another VALIC financial professional attempted to contact clients previously serviced by Rawls. At least eight of those clients stated that Rawls had already contacted them regarding his separation from VALIC.

60. On March 16, 2021, a VALIC financial professional spoke with a client who shared that Rawls had reached out to him the day before. Rawls told the client that he and Robertson were moving to a new company and would like to meet with the client. Rawls also told the client that there were problems with the VALIC Companies that he needed to discuss with the client and that Rawls was an independent fiduciary. The client did not know how Rawls had gotten his number.

61.     On that same date, a VALIC financial professional spoke with another client who said Rawls contacted her on behalf of Robertson.  Another client said she had already spoken with Robertson about his departure.

62.     The VALIC Companies have received and continue to receive calls and emails from Protected Customers who feel as if Defendants are harassing them to transfer their accounts to CG Advisory Services.

63.     At least one of the VALIC Companies' clients, whose employees invest in VALIC products and are advised by VALIC Company advisors, has shared concerns from one of its employees about solicitation and the security of their personally identifiable information. Specifically, that employee was concerned that one of the agents who resigned has their personal information and used it to contact them.

64.     As recently as March 18, 2021, the VALIC Companies have received complaints regarding repeated contact by Rawls.  Specifically, one of the VALIC Financial Advisors who has been assigned to the clients previously serviced by Rawls spoke to a client who said Rawls has been calling him a "couple of times a week," even though the told Rawls that he is not leaving VALIC.

65.     As recently as March 25, 2021, Robertson reached out to other financial professionals to share the reasons why he left VALIC.

**Harm Caused by Robertson, Coreth, and Rawls**

66.     As of March 25, 2021, VALIC and VFA have processed transfer-out requests from at least seventeen (17) customers (not including accounts held by Rawls), who previously had been assigned to Rawls while he was employed with VALIC. The total funds subject to these recent transfer requests are in excess of $6,500,000.00. The forms that request transfer-outs

from the clients' existing accounts show that those funds are moving to CG Advisory Services and TD Ameritrade.

67.     As of March 25, 2021, VALIC and VFA have processed transfer-out requests from at least thirty eight (38) customers, who previously had been assigned to Robertson while he was employed with VALIC. The total funds subject to these recent transfer requests are in excess of $21,300,000.00. The forms that request transfer-outs from the clients' existing accounts show that those funds are moving to CG Advisory Services and TD Ameritrade.

68.     As of March 25, 2021, VALIC and VFA have processed transfer-out requests from at least sixteen (16) customers, who previously had been assigned to Coreth while he was employed with VALIC. The total funds subject to these recent transfer requests are in excess of $6,800,00.00. The forms that request transfer-outs from the clients' existing accounts show that those funds are moving to CG Advisory Services and TD Ameritrade.

69.     The financial professionals that are contacting the VALIC Companies' clients have reported that Robertson, Coreth, and Rawls are making them uncomfortable.  Some clients have a concern that these former agents have their personal information and some have expressed concern after Defendants made comments about Plaintiffs' products and business.

70.     Counsel for Plaintiffs sent a cease and desist letter to each of the individual Defendants on February 25, 2021.  Defendants did not respond.

71.     Counsel for Plaintiffs sent a cease and desist letter to the Chief Compliance Office of CG Advisory Services on March 11, 2021, and copied Defendants.  Neither CG Advisory Services or Defendants responded.   Defendants' ongoing solicitations of VALIC Companies' clients continued.  In fact, from March 11 to March 25, 2021, 12 new clients, who had not previously moved any assets, have transferred their assets away from the VALIC Companies.

## COUNT I – Breach of Contract

72.     The allegations of Paragraphs 1 through 71 are incorporated herein by reference with the same force and effect as if set forth in full below.

73.     By virtue of the conduct described herein, Defendants have violated the contractual obligations contained in their FPAs.

74.     Defendants are continuing to violate their contractual obligations.

75.     The VALIC Companies have performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms of the FPAs.

76.     Defendants' actions have caused and are threatening to cause irreparable harm and loss to the VALIC Companies and could cause the VALIC Companies substantial loss of market share and goodwill so as to warrant injunctive relief.  Without such equitable relief, the Court will not be able to restore or repair the business relationships that will continue to be damaged or destroyed by each Defendant's acts in breach of his FPA.

## COUNT II – Misappropriation of Trade Secrets

77.     The allegations of Paragraphs 1 through 76 are incorporated herein by reference with the same force and effect as if set forth in full below.

78.     The books, files, and records of the VALIC Companies, the confidential information contained therein, and especially the data pertaining to the VALIC Companies' Protected Customers, including their names and addresses, and well as additional information such as social security numbers, account numbers, financial status, financial statements, investment objectives and preferences, assets and/or securities held by the Protected Customers, and other highly confidential personal and financial information are trade secrets of the VALIC Companies subject to protection under Virginia law.

79.     This information derives independent economic value by not being accessible, through proper means, to competitors such as Defendants, who can profit from its use or disclosure.   The identities of the VALIC Companies' Protected Customers are not readily available to the public or to the VALIC Companies' competitors.   The VALIC Companies have spent significant sums, in terms of both financial and human resources, to develop and maintain this information, which is of great value to any competitor.

80.     The VALIC Companies have taken more than reasonable and adequate measures under the circumstances to maintain the secrecy of this information, including assigning computer-access passwords to be used to access VALIC computer systems and records, restricting access to its business premises, publishing express policies prohibiting the disclosure of confidential information during and after employment, and having employees, including Defendants, sign agreements that expressly prohibit the use and disclosure of such information outside of VALIC's business purposes.

81.     Defendants' conduct as described herein constitutes actual and threatened misappropriation of the VALIC Companies' confidential, trade secret information in violation of Virginia law.

82.     Defendants' actions have caused and are threatening to cause irreparable harm and loss to the VALIC Companies and could cause the VALIC Companies substantial loss of market share and goodwill so as to warrant injunctive relief under Virginia Code § 59.1-337.

83.     Defendants have acted willfully and maliciously in misappropriating the VALIC Companies' trade secrets warranting punitive damages in an amount not to exceed twice any award for damages or $350,000.

**<u>COUNT III – Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836</u>** *<u>et seq.</u>*

84.     The allegations of Paragraphs 1 through 82 are incorporated herein by reference with the same force and effect as if set forth in full below.

85.     During Defendants' employment, they were provided access to and did in fact receive and review the VALIC Companies' trade secret information, documents, and materials. Such information and materials include, but are not limited to, the books, files, and records of the VALIC Companies, the confidential information contained therein, and especially the data pertaining to the VALIC Companies' Protected Customers, including their names and addresses, and well as additional information such as social security numbers, account numbers, financial status, financial statements, investment objectives and preferences, assets and/or securities held by the Protected Customers, and other highly confidential personal and financial information.

86.     Such information has been assembled and compiled by the VALIC Companies at considerable expense, is maintained in confidence, and is of considerable independent economic value because it is not available to the VALIC Companies' competitors.

87.     The VALIC Companies have made reasonable efforts to preserve the confidentiality and secrecy of such information.

88.     The information identified in the preceding paragraphs consists in whole or in part of trade secrets defined by the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836 *et.  seq.*

89.     Upon information and belief, Defendants improperly used and/or disclosed VALIC's trade secrets in an unauthorized manner for their own benefit.

90.     Defendants' actions constitute misappropriation of trade secrets under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836 *et.  seq.*

91.     Defendants' actions have caused and are threatening to cause irreparable harm and loss to VALIC and could cause VALIC substantial loss of market share and goodwill so as to warrant injunctive relief.

## COUNT IV – Breach of Fiduciary Duty

92.     The allegations of Paragraphs 1 through 90 are incorporated herein by reference with the same force and effect as if set forth in full below.

93.     Defendants had, and continues to have, a common law duty of loyalty arising as a result of their relationship as an employee, agent and/or representative of the VALIC Companies.

94.     Defendants had a confidential relationship with the VALIC Companies.

95.     During their employment with VALIC, Defendants took steps to access client information and, upon information and belief, Defendants are now using that information to solicit clients.

96.     Defendants are now using for their own benefit the VALIC Companies' client information and relationships they gained as a result of their employment with the VALIC Companies, and they are doing so for the purpose of contacting and soliciting VALIC Companies' clients to transfer their accounts to their new firm, CG Advisory Services, a competitor of the VALIC Companies.

97.     Defendants' actions as described herein constitute a violation of Defendants' duty of loyalty to the VALIC Companies.

98.     Defendants' actions have caused and are threatening to cause irreparable harm and loss to the VALIC Companies and could cause the VALIC Companies substantial loss of market share and goodwill so as to warrant injunctive relief.

99.     Defendants have acted willfully and maliciously in breach of their fiduciary duties warranting punitive damages in an amount not to exceed $350,000.

**COUNT V – Tortious Interference with Contract and Business Expectancy**

100.    The allegations of Paragraphs 1 through 97 are incorporated herein by reference with the same force and effect as if set forth below.

101.    The VALIC Companies had contracts with each of the three Defendants.

102.    Defendants were aware of the contractual relationships and, through improper means, interfered with those contractual relationships.

103.    The VALIC Companies also had clear business relationships with its Protected Customers.

104.    Defendants were aware of these relationships.

105.    Defendants purposefully intended to interfere with the VALIC Companies' relationships with its Protected Customers and their actions as alleged herein did, in fact, interfere with such relationships by improper means.

106.    Defendants improperly interfered with Plaintiff's client relationships by breaching their fiduciary duties through the misappropriation of confidential and trade secret information.

107.    Defendants also improperly interfered with Plaintiffs' client relationships by making false statements to Plaintiff's clients that Plaintiffs do not owe the same high fiduciary duty to them.

108.    Defendants' actions impaired, or will impair, the VALIC Companies' business relationships with its Protected Customers.

109.    Defendants' actions have caused and are threatening to cause irreparable harm and loss to the VALIC Companies and could cause the VALIC Companies substantial loss of market share and goodwill so as to warrant injunctive relief.

110.    Defendants have acted willfully and maliciously in tortiously interfering with the VALIC Companies' contracts and business expectancies warranting punitive damages in an amount not to exceed twice any award for damages or $350,000

**COUNT VI – Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030**

111.    The allegations of Paragraphs 1 through 107 are incorporated herein by reference with the same force and effect as if set forth below.

112.    The Computer Fraud and Abuse Act ("CFAA") protects employers who have been injured by the wrongful access of a protected computer by an individual without authorization or in excess of his authorization.

113.    Defendants accessed a protected computer outside of authorized purposes when they viewed the VALIC Companies' client data for the purpose of, upon information and belief, using it after their resignations.

114.    Defendants' actions as alleged herein violate the CFAA.

115.    Defendants' actions have caused and are threatening to cause irreparable harm and loss to the VALIC Companies and could cause the VALIC Companies substantial loss of market share and goodwill so as to warrant injunctive relief.

**COUNT VII - Conspiracy**

116.    The allegations of Paragraphs 1 through 112 are incorporated herein by reference with the same force and effect as if set forth below.

117.    Defendants conspired together to induce the breaches of fiduciary duties and tortiously interfere with Plaintiff's contracts and client relationships as described above.

118.    Defendants also conspired together to misappropriate and use Plaintiff's trade secrets and confidential information.

119.    Defendants engaged in wrongful acts to accomplish the fruits of their conspiracy and, as a direct and proximate result of the foregoing, Plaintiffs have suffered and will continue to suffer damages in an amount yet to be determined.

**COUNT VIII – Statutory Business Conspiracy in Violation of Va. Code § 18.2-499 and 500**

120.    The allegations of Paragraphs 1 through 116 are incorporated herein by reference with the same force and effect as if set forth below.

121.    Defendants conspired to harm Plaintiffs' reputation, trade business, and profession by inducing breaches of fiduciary duties, tortiously interfering with Plaintiff's contracts and client relationships, and misappropriating and using Plaintiff's trade secrets and confidential information.

122.    Defendants' actions have caused Plaintiffs to suffer damages in an amount yet to be determined.

**Request for Injunctive Relief**

By virtue of the foregoing, the VALIC Companies have demonstrated a likelihood of success on the merits of their Breach of Contract claim, Misappropriation of Trade Secrets claim, and Breach of Fiduciary Duty claim and that a balancing of the equities favors the issuance of an injunction against Defendants.

Unless Defendants are preliminarily enjoined from the foregoing conduct, the VALIC Companies will be irreparably harmed by: (a) disclosure and misuse of trade secrets, customer

lists, and/or other confidential information that is solely the property of the VALIC Companies and their clients; (b) loss of confidentiality of the information contained in clients' records, loss of confidentiality of clients' financial dealings, loss of confidence and trust of clients, loss of goodwill, and loss of business reputation; and (c) present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

Additionally, Defendants have already consented to injunctive relief in their agreements and the VALIC Companies have no adequate remedy at law.

## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, the VALIC Companies respectfully request that this Court:

(1)    Enter a temporary restraining order and/or preliminary injunction enjoining Defendants, whether individually or in concert with others, from directly or indirectly using, retaining, disclosing, or transmitting for any purpose (including but not limited to the inducement or solicitation of Protected Customers) any and all property of the VALIC Companies as defined in Section V.C.3 of the Financial Professional Agreement, including the VALIC Companies' Client Information.  For the avoidance of doubt, "the VALIC Companies' Client Information" shall include, without limitation, any and all personal and financial information of the VALIC Companies' clients, including all information contained in or obtained through computer software systems and databases such as AGILEnet, or in hard copy, including, without limitation, contact information, social security numbers, account balances, surrender values, maturity dates, flow status, past and present product investments, investment performance data, investment histories, demographic information, and customer preferences, whether or not committed in whole or in part to memory. The VALIC Companies' Client Information further includes any nonpublic

personal information as that term is used in the Gramm-Leach-Bliley Act of 1999, including any similar information committed to memory;

(2)     Order Defendants, and anyone acting in concert or participation with them, including but not limited to their counsel, Registered Investment Advisor, and their broker-dealer, to return to Plaintiffs' counsel any and all property of the VALIC Companies, including the VALIC Companies' Client Information, whether in original, copied, computerized, handwritten, or any other form;

(3)     Order each Defendant to provide a certification that (a) he and any person directed, managed, or acting at his direction, including Defendants' broker-dealer, no longer possesses any of the VALIC Companies' Client Information, either in electronic, hard copy, or any other format; (b) identify to the VALIC Companies all electronic storage media on which any of the VALIC Companies' Client Information or other information of the VALIC Companies has ever been stored, including any and all non-VALIC Companies computers, USB storage devices, and email accounts; and (c) certify that: (i) he and any person directed, managed, or acting on his behalf have complied with each of the foregoing; and (ii) has not directly or indirectly disclosed any of the VALIC Companies' Client Information to any third party. In the event that any Defendant is unable to provide the certification as to part (c)(ii), above, he shall provide a full accounting of all disclosures of the VALIC Companies' Client Information, with such accounting to include, at a minimum, the VALIC Companies' Client Information disclosed, the recipient(s) of such information, the date of disclosure, the reason for the disclosure, and a certification that that Defendant will not attempt to access or use the VALIC Companies' Client Information disclosed in any manner or method prohibited by the Court's order;

24

(4)     Enter a temporary restraining order and/or a preliminary injunction (a) enjoining Defendants and any person that they manage, direct, or is acting on their direct or indirect behalf, specifically including but not limited to any officer, agent, employee and/or representative of CG Advisory Services, from soliciting or inducing, or attempting to solicit or induce, whether directly or indirectly, any of the VALIC Companies' clients to end or alter his, her or its relationship with the VALIC Companies; (b) enjoining Defendants and any person that they manage, direct, or is acting on their direct or indirect behalf, specifically including but not limited to any officer, agent, employee and/or representative of CG Advisory Services, from soliciting or inducing, or attempting to solicit or induce, whether directly or indirectly, any of the VALIC Companies' employees to end or alter his, her or its relationship with the VALIC Companies; and (c) requiring each Defendant to furnish the VALIC Companies a list of all of the VALIC Companies' clients that they, or anyone acting for their benefit, including but not limited to any officer, agent, employee and/or representative of CG Advisory Investments, has contacted since January 1, 2021, including the date, time, manner and substance of such contacts;

(5)     Enter a temporary restraining order and/or a preliminary injunction temporarily enjoining Defendants, whether alone or in concert with others, including any officer, agent, employee and/or representative of Defendants' broker-dealer, from processing any change of broker-dealer forms signed by Protected Customers until such time as the customer's knowing choice can be confirmed;

(6)     Order Defendants to disgorge any profits, commissions or other monies earned by them as a result of their unlawful actions described herein;

(7)     Order Defendants to pay a reasonable royalty on the misappropriated trade secrets or otherwise make payments to remedy Defendants' unjust enrichment;

(8)     Order Defendants to pay damages to Plaintiffs caused by Defendants' unlawful conduct as described herein;

(9)     Order Defendants to pay punitive damages for their malicious or reckless conduct;

(10)    Order Defendants to pay treble damages pursuant to Va. Code 18.2-500

(11)    Order Defendants to pay attorneys' fees pursuant to Va. Code § 18.2-500, and Va. Code § 59.1-338; and

(12)    Award such other and further relief to Plaintiffs as this Court deems just and proper.

Date: April 5, 2021                           Respectfully Submitted,

                                              */s/ Charles M. Sims*
                                              _____

                                              Charles M. Sims (VSB No. 35845)
                                              O'HAGAN MEYER PLLC
                                              411 E. Franklin Street, Suite 500
                                              Richmond, Virginia 23219
                                              Telephone: (804) 403-7100
                                              Facsimile: (804) 403-7110
                                              csims@ohaganmeyer.com

                                              Matthew I. Penfield (pro hac admission pending)
                                              Bressler, Amery & Ross P.C.
                                              2001 Park Place, Suite 1500
                                              Birmingham, Alabama 35203
                                              Telephone: (205) 729-0400
                                              Facsimile: (205) 719-0500
                                              mpenfield@bressler.com

                                              *Counsel for Plaintiffs The Variable Annuity Life
                                              Insurance Company and VALIC Financial Advisors,
                                              Inc.*

**VIA EMAIL AND CERTIFIED MAIL RETURN RECEIPT REQUESTED ON:**

Thomas Robertson
39 Windthistle Lane
Nellysford, VA 22958
Email: tomrobertson01289@gmail.com

Charles Coreth
5616 St. James Court
Richmond, VA 23225
Email: corethconsulting@comcast.net

Michael Rawls
1718 Hanover Ave
Richmond, VA 23220
Email: rawlsma@gmail.com

**TO BE SERVED VIA SPECIAL PROCESS SERVER ON:**

Thomas Robertson
39 Windthistle Lane
Nellysford, VA 22958

Charles Coreth
5616 St. James Court
Richmond, VA 23225

Michael Rawls
1718 Hanover Ave
Richmond, VA 23220

/s/ *Charles M. Sims*_____
OF COUNSEL